JUDGE CO ALTER:
April 5
There are two questions presented by the_ record in this case; 1st. Was the transaction in the nature of a mortgage, or a conditional sale? 2nd. If the former, or if there is a doubt on the subject, ought the party to be permitted now to redeem, under all the circumstances of the case?
I think there is at least considerable doubt as to the real intention of the parties, and the true nature of the transaction; especially when the peculiar provisions of the written instrument are taken in connection with the cotemporaneous and subsequent conduct of the parties.
Upon the face of the writing alone, this case is perhaps more like a conditional sale, than that of Chapman and Turner. , In both- cases, .the labor was to stand for the interest until the day of re-payment, when the principal alone was to be returned. In both, the value of the property was little more than the money advanced. In this case there was, perhaps, less inequality than in that. But in this case there is this peculiar feature; the co.ntract provides expressly that in the case of the death of the *slave, before the day of re-payment, the loss was to fall on the party who received the money; the necessary implication from which is, that if he died after the day, he died the property of the other party, who it was said was then to have the fee. This risque is incompatible with the idea of a mortgage, and is one which, considering it as a mortgage, a court of equity would either have to relieve against, as altogether unconscionable; or if that court could not annul this part of the contract, at least when applied to for permission to redeem, it could well say to such application, especially after a great lapse of time; “this condition imposed a risque against which you cannot indemnify, and as redemption is permitted on the ground that you can indemnify; it will be denied in 'this case.”
Whether we consider it a conditional sale or a mortgage, neither party expected a redemption after the day; otherwise, this risque would no more have been thrown on the party after, than before, the day.
In the case of Chapman and Turner, the answer explained the nature of the transaction, so as to change it from what it might otherwise have appeared from the writing. Had Turner been dead, that case would perhaps have been considered a mortgage, to the ruin of his family, when in truth it was no such thing.
But the doubt here, arising from the paper itself, is not removed, but increased,, by the cotemporaneous acts of the parties,, and the long acquiescence. Some time after the day of payment, the party either offered the money, believing that he had a right then to redeem; or thinking he had no such right, unless the other would agree to it, held a conversation with him on the subject, and finding he would not, never offered the money.
I think from the evidence, that this latter was most probably the fact. If so, how can we say whether this opinion arose from a knowledge that it was a conditional sale, or from a mistaken idea, that though if it was a *mortgage, he had no right to redeem after the day; and especially when the property was to be thenceforth at the risque of the mortgagee? for, if the slave had died the next day, he having refused the money, no court would have decreed it to him, as his declaration united to the acquiescence of the other party, would, in that event, have forever stamped upon the transaction, the character of a conditional sale.
But if he thought it a mortgage, and that he had a right to redeem, he was apprized of the opposite construction, and acquiesced therein, until after the death of the-party. He either did so, because; having received a good price for his slave, he was unwilling to risque a suit; or he intended, at some future day, when, if the slave lived, his hires might amount to, or exceed the debt and interest, to bring his suit to redeem: well knowing, that should the slave die in the mean time, it would be no loss to hirn, but to the other party. If he really intended to abandon his right to redeem, if he had it, I can see no reason why, under all the circumstances, he should now be permitted to re-assert it, especially, as before stated, he cannot make compensation for the risque run as aforesaid. And if he never intended to abandon, but merely lie by, to take all advantages and throw every risque on the other party, I think such unfair conduct ought not to make him1 a favorite of a court of equity.
I well recollect that such conduct, unaccompanied too by any stipulated risque, as in this case, had great weight in turning the scale in the case of Dickey and Dickenson, (a) Circumstances of this kind, if not decisive of the question of conditional sale or not, are at least well calculated to create doubts upon that subject; and when doubts exist, or where to permit redemption would be hard and unconscionable, as in this case, they at least afford good ground to conclude that the right to redeem was *waived; especially when the money advanced was a reasonable and adequate price for the property. For these reasons, I am for reversing the decree of the chancellor and affirming that of the county court.
Were I of a different opinion, I think.. *55 the decree ought to have been opened to admit the new matter of defence stated in the petition for that purpose.
JUDGE CABELL:
There is no particular form of expression which will necessarily determine a conveyance to be a mortgage, or a conditional sale. It must always depend on the intention of the parties. In the total absence of all extraneous circumstances, the instrument must be judged of by itself. But an instrument which, in its form, imports to be an absolute conveyance, may be determined to be a mortgage, whilst another, importing on its face to be a mortgage, may be determined to be a conditional sale, according to the intention of the parties, as evinced by testimony aliunde. Ross v. Norvell,(b) affords an instance of the former; and Chapman v. Turner,(c) affords an instance of the latter. If the instrument now before us were to be judged of by itself, abstracted from the circumstances detailed in the evidence, I should be of opinion that it is a mere mortgage. According to its terms, it is a borrowing of money. Nothing is said about the sale or the price of the negro. He was received by Roberts as a security for money borrowed. His labor was to be for the interest of that money, and his life was to be at the risque of the borrower until the day appointed for re-payment of the principal. It is unquestionably true, as contended by Mr. Leigh, that on default of payment at the day, the parties intended the risque to be thereafter on Roberts. That was the necessary result of the declared intention of *the parties, that after such default, the negro was to become the property of Roberts. But that may have been intended as a mere forfeiture, or as a restriction on the right of redemption; which, if the transaction be really a mortgage, equity will not tolerate. Such is the opinion which I should form on the instrument itself.
But the circumstances exhibited in the testimony are not such as to justify the inference of a court of equity. Notwithstanding the form of the instrument, the parties may have intended a sale and not a security; and the sum advanced by Roberts may have been the agreed price of the negro. The testimony shews it was not more than his fair value. But, as both parties intended that Thompson might, and as both of them, probably, expected that he would, regain the negro by repaying the price within the short period allowed for that purpose, (in which event the practical operation of the transaction would rather resemble a loan than a purchase,) it is not surprising that, regardless of technical language, they gave to a contract which was really a purchase, the forms of a loan. It is in proof that the money not being repaid at the day, Roberts refused to receive it thereafter, and claimed the negro as his own. This could only be justifiable, in law, on the ground of the transaction having been intended by the parties as a sale and not a mortgage. Thompson, with the full knowledge of this pretension on the part of Roberts, silently acquiesced in that pretension for more than ten years. We cannot suppose so long an acquiescence proceeded from ignorance that the law authorised him to enforce a redemption, in case the contract had been no more than a_ mortgage. This acquiescence, when taken in connection with the fact, that, although Roberts survived the transaction for many years, he was permitted to die before the suit was brought, cannot, according to the evidence in this cause, be satisfactorily accounted for on any other consideration than a conviction on the part of Thompson, that Roberts had it in his power, by shewing *the real character of the transaction, effectually to oppose his demand. Under such circumstances, every thing that can fairly be presumed, ought to be presumed against the complainant. I am therefore, of opinion, on the merits, to reverse the decree of the chancellor, and to affirm that of the county court.
But, if my opinion on the merits, as disclosed by the evidence exhibited in the record, had been different, I should still have thought the court of chancery erred in refusing to open the interlocutory decree, so as to allow the appellants the benefit of the newly discovered fact stated in the petition of Roberts’s administrator.
JUDGE BROOKE:*
Upon the face of the contract in this case, it was a pledge or pawn of the slave Jerry, and not a conditional sale. There is nothing in it that intimates a price to be given, which is essential in a sale. The expression in the contract, that if the said, negro died before the first day of March next, it is to be the loss of the said Thomp-; son, means nothing more than what would, have been the effect of an irredeemable, forfeiture, which, though intended by the parties, _ a court of equity will not permit. The object was to borrow money; and the slave was delivered to the lender to‘ keep down the interest until the day of payment. The fact proved, that the value of the property and the money lent, were nearly, equal, does not affect the case, as no treaty for a sale is proved. The inference from the fact, that Thompson tendered the' money a short time after the day of pay-, ment^ is against the idea that he considered it a conditional sale; though that is" somewhat accounted for by the fact, that he was absent on a journey, at the day of payment. However that may be, the refusal of Roberts to receive the money, on the *ground that it was a sale, was full notice to Thompson, that his right to redeem was denied by, Roberts; and though I am not prepared to-say, that the possession of Roberts was thereby converted into an adversary possession, to which the act o'f limitations would apply, I am of opinion, that Thompson ought to have asserted his right at an earlier day; and that it would be unjust *56 after the lapse of thirteen years, and after the death of Roberts, to permit him to redeem. I think, therefore, that the decree of the chancellor ought to be reversed, and the decree of the county court affirmed.

 See the last note.

 1 Wash. H.

 1 Call, 280.

Tudge Roane absent, from the continuance of that cause which has for so long- a time deprived the public of his important services. — Note in Original Edition.